Case No. 15-2323, Farm Bureau General Insurance v. Blue Cross Blue Shield of Michigan, et al. Argument not to exceed 15 minutes per side. Mr. Baker, you may proceed with the appellate. Good morning, Your Honors. Fred Baker on behalf of Farm Bureau.  When I asked my mother the meaning of interstices, the first thing she did was to correct my pronunciation, for which I thank her today. And then she explained to me that interstices refer, the word refers to the places that are really holes in a grid. And she used a very homely example. She had a climbing rose which grew on a lattice. She said the holes in the lattice are the interstices of the lattice. This case involves interstices. Interstices in ERISA. Just as Brandeis told us, excuse me. I said the holes are pretty small in that statue. Well, but they do exist, Your Honor. But I agree with you. In fact, I'm going to point out one hole that couldn't possibly be involved in this case. Just as Brandeis told us that in ERI that there is no federal common law. But in fact there is. When I did my due diligence on this panel, I discovered that Judge Kethledge has only one ERISA experience. He wrote a brief with Ron Longhofer, at least that I could find. Yes, I mean, is this a video search? Yes, yes. Judge Cook, I didn't find anything for you. But if you look to your left, you'll see a judge who has written 77 opinions that discuss ERISA, seven of which also involve federal common law and its application in ERISA. I learned something from reading your opinion, Judge Sargas and Litchfield, against UPS, in which you pointed out that only two statutes so preempt state common law that they require the development of federal common law. One of them is ERISA. The other is the Federal Labor Management Relations Act. And you said that the ADA does not preempt and that we do look to state law in that case. Well, what we sought in this case, on behalf of Farm Bureau, was the development of some federal common law under ERISA. I'll begin by pointing out that a COB, or Coordination of Benefit Dispute, cannot possibly be a prerequisite to a federal common law or the application of federal common law, for the simple reason that in 1994, this court definitively decided, 22 years ago, that when there are two coordination of benefit clauses, one in a plan, an ERISA plan, and one in an insurance policy, the plan wins because ERISA preempts state law. So you agree there is no priority dispute in this case, right? That's correct, and there doesn't need to be one. And Blue Cross concedes that, I guess, they would be first in line. Absolutely, if they determine under their plan that the treatment rendered was medically necessary. And that's really the question we're trying to get to and have never been allowed to get to in this case.  The Coordination of Benefits Clause is certainly not one of them anymore. Since Thorne-Apple Valley in 1994, the plan wins if it has a Coordination of Benefits Clause. The real question is, how do we determine which policy, which plan or the policy, has primary responsibility to pay for poor Mr. Van Kamp's treatment? There he is with a catastrophic brain injury. I'm here. Why did Farm Bureau go ahead and pay the freight here without exhausting the administrative challenge? Two questions there, really. Pick the one you wish to answer first. I'm going to address both of them because both of them feed into what I'm about to say anyway. First, Farm Bureau paid because one of the unique aspects of this case, one of the reasons it's one of the interstices in ERISA, is that Farm Bureau is an auto insurer, and Michigan has the most unique no-fault plan in the United States. Under that plan, one of the rules is that when there's a dispute between, when there's a war between insurers, the court and the legislature have both said in Michigan, we don't care, you can solve your dispute after you pay. And under the Darnell against auto owners case that's cited in my brief, the rule is very clear. Farm Bureau, as the only auto insurer here, ultimately had to make a payment because if it doesn't, we were talking to Specialtree, we were working with them, we told them sooner or later this is going to get sorted out. But when it was clear that Blue Cross was never going to come around, we paid, because an auto insurer has that duty in Michigan. But you paid well after you filed the complaint. Excuse me, I talked over you. I don't want to interpose with the second question, whatever that was, but you paid way after you filed the complaint. This is a 12B6. We decided, the district court decided it based on what's in the complaint. Payment's not part of the complaint. Nor does it need to be. What we needed to find out was who has priority here, not coordination of benefits, but priority. I don't understand that.  Well, it's actually not a 12B6 case because matters outside the complaint were looked to both by the court and relied upon by us in our motion, in our response to the motion. Well, I don't want to get in the way of the other issue you were addressing. Well, the key here is that this is not a coordination of benefits case. This is an interstitial ERISA case, and it is interstitial because we have unique circumstances. One, Farm Bureau was never informed by Blue Cross. Blue Cross knew that it had an auto insurer. It knew that it had denied coverage. It knew that it had an appeal pending. It knew that it had denied that appeal in February. Excuse me. It denied it, yes, on February 14th of 2014. None of that was ever passed along to auto owners, which was trying to get discovery, which had started a DEC action in December of 2013 because Special Trees started to look to us for payment. We said, we think Blue Cross has priority here, and, in fact, they admit they do. But they wouldn't tell us the basis for their denial. They wouldn't tell us what their plan said. The court had to order Blue Cross to turn that over to us in May of 2014, and guess when they did. They gave it to us on the anniversary of the fourth month deadline for taking a second-level appeal. We didn't get that information until it was too late, even if we had paid and become equitably subrogated, until it was too late to pursue any administrative remedy under the plan. So that's what our joint notice says to the court on June 19th of 2014. We've been denied discovery. We just discovered, we just found from documents that Blue Cross turned over to us pursuant to the court's order in May, that the appeal deadline has passed, and we need a determination who has priority here. I guess I'm confused by what you're looking for because, again, I thought Blue Cross has already conceded they would have priority if there was a liability, which they say there isn't, because I guess in their view the care was greater in some sense than necessary. We're trying to get to the question of medical necessity, something that the court never reached because it erroneously thought there had to be a coordination of benefits dispute for a federal common law remedy to apply. There are two sections of ERISA. What is the basis, then, of the court to come in and provide you relief here? Congress, you said in Thornaple- ERISA. I actually have written some ERISA opinions since I was an associate with Mr. Longhoffer. What section of ERISA are you relying upon? That's the point. There is no section on which to rely because we are interstitial. We are not participant- Well, I think the statute does provide us a remedy because the statute is designed to provide national uniformity for the payment of benefits and for the administration of plans, and there has to be a means of determining when there is an admission that there is primary coverage, but there has been no opportunity for the insurer to secure a determination of whether the plan applies because all information was withheld until after it was too late to invoke the plan's procedures for getting that determination. There has to be a remedy in federal court applying federal common law. This court said in Thornaple, Congress explicitly directs the federal courts to develop a body of common law to fill in the interstices of this statutory scheme. ERISA presents just such a situation. Federal common law is expected to develop and address rights and obligations arising under ERISA. We need a determination of whether, as Blue Cross said, there is no medical necessity for this treatment. All of it. They denied it, as we finally found out, on the basis that it was rendered in a skilled care facility, which had been prescribed by Mr. Van Kamp's physician, and which is covered by the plan if it is prescribed by the treating physician. What effect, if any, upon your argument does the fact that the Van Kamps, for whatever reason, did not pursue their administrative appeal have? Well, it actually has a drastic effect if we are denied any notice that an appeal period is running. What effect, legally, upon the arguments you're making here, does their failure to exhaust have? Does that affect you as some sort of subpoena? No, it does not. No, it does not, Your Honor. And the reason it doesn't is under 502A1, we're neither a participant nor a beneficiary. Under 502A3, may I complete my response to your question, Your Honor? I'm out of time. You may. And under 502A3, we were not at that point equitably subrogated. We had no standing under the plan to pursue that appeal. Thank you. Thank you. Thank you. Good morning, Your Honors. Jesse Zabczynski on behalf of Blue Cross Blue Shield of Michigan. This matter is a claim for benefits under ERISA. I think that's pretty clear. What Brother Counsel said here is that they're trying to get to the question of medical necessity. Apart from the intricacies of that denial, that's a garden variety claim for benefits under ERISA. ERISA is very clear as to who can bring that type of suit, a suit challenging a denial for a claim for benefits. Why is Counsel incorrect in his argument with respect to futility, inasmuch as he tells us that your production of documents left them no time? There's two ways that that can be addressed. One, futility isn't determined by an untimely invocation of the administrative appeal rights. So, one, it never would have been timely. The second part of it regarding this entitlement to the notice. I didn't follow that answer. I'm sorry. There's a certain time frame in which they needed. Is Counsel correct in telling us that it was only at the last minute that Blue Cross produced the documents that allowed them to perceive that the time had run? The documents were produced in June, certainly when the time frame for the appeal process had run out or been close to running out. How much time was left? This is where the futility argument, I take it, comes in. Yes and no. I think their argument is that it's futile because they didn't have enough time to, you know, invoke the appeal process or engage themselves in the appeal process. That's what I take it. But when you sort of take a step back to that. Is that incorrect? Incorrect. Is that argument incorrect? Please give us your side of that. Yes, it's incorrect. In what regard? Futility is not determined by whether the appeal was filed timely or not. Futility is whether there can be a clear indication as to whether it would be overturned on that appeal, and that's not what we have here. There's no clear indication that had they appealed that it would have been overturned on that appeal, and that's the standard for judging the futility. Okay. Go ahead. Taking you back a step to big picture, is it your view that if there's a dispute as to which insurance company should pay when both at least have some potential liability, that under ERISA there's no relief for accompanying the position of Farm Bureau? No, I believe the courts have established relief in this instance. There's certainly direct standing by a participant or a beneficiary to bring a claim for benefits. The courts have also given derivative standing to assignees as well as subrogees. I guess that's the question. Do you view Farm Bureau as either of those two? They were not a subrogee until they paid the claims, which was well after this case had been filed. It was about a month before the opinion was rendered by the judge, and that's where the foundation of our argument always was in this case. When this case was filed, they were seeking a challenge to that medical necessity to dial, but they don't have standing to do that unless they have derivative standing through a participant or beneficiary. They only attain that standing once they paid the claims, which was well after this case had been filed. And regarding the futility piece and the entitlement to the notice of denial, I think that's a bit of a red herring. There was a case from the Southern District of Ohio that cited to another Seventh Circuit opinion that holds in a similar vein. It's not a subrogee, but it's regarding an assignee, which both in this instance would be looking to derivative standing. The case from the Southern District is Barracks Clinics of Ohio versus Longaberger Family of Companies Group Medical Plan, 459 F sub 2D 617. On page 623, it says, quote, an assignee who has not given proper notice of its status to the plan administrator is not entitled to notice of a denial. In the same vein here, Farm Bureau was not a subrogee in this case until July of 2015. The documents were given to them in June of 2014, over a year after those had been given to them. They never achieved their status that they needed. What should Farm Bureau have done, in your view, in order to have been able to contest in court or seek payment from you guys for the claims that they paid out? They should have paid the claims. They jumped the gun on filing the suit. They did earlier. Right. They did pay. They did, almost two years after these claims were originally denied. These claims were denied in July of 2013, and they didn't pay the claims until July of 2015. They filed the suit in December, seeking a declaratory action in recoupment for a priority dispute, which didn't exist. The only dispute that was at issue was a claim for benefits. If they wanted to get to that challenge, they needed to pay the claims, become a subrogee, which the courts have said gives them the ability to bring such a suit. And presumably you would have said, well, you're a subrogee of somebody who didn't exhaust, so you lose. I don't think that's correct, because the claims were denied in July of 2013. The appeal after the first level appeal wasn't rendered until February of 2014. So had they notified us that they were a subrogee, and as the case that I just cited to you said, had they notified us that they were a subrogee, proved that they were a subrogee, they could have continued that appeal process to the second level. It hadn't run at that point. They still had a time frame in which to do so. It's a bit odd, though. When you are conceding that you're first in line for liability for Mr. Van Kamp's expenses, and yet you don't pay, and you're saying the only way that they can contest which of your two companies is liable is if they pay. They put up all the money that you've refused to put up. And they're second in priority. It just seems like a pretty expensive ticket to get into the courtroom, I guess. They also have the ability to challenge whether claims are also payable under their policy as well. Under the Michigan statute, it's whether they're reasonably medically necessary.  If they have this fight with you, that would be a fight with their insurer. Correct. If they have this fight with you, they have to pay close to $1 million, and you don't have to do anything. Well, I think it all goes back to whether the claims are covered under the policy. I mean, I think the plan is entitled to its denial if it feels that the claims are not covered under the policy. And that's what's happening here. Yes, we're primary, and as we've indicated, we've admitted that. But we're also allowed to determine whether claims are covered under that plan. I haven't seen it in this instance, but I guess it certainly may be a possibility that they could have received an assignment of benefits from the member, and maybe they could have pursued it that way without having to pay it. In the instance of when a medical provider gets an assignment of benefits from a member, certainly they've rendered the service. They're not paying the claim, necessarily. They're looking to get payment. I suppose that could happen in this instance. I haven't seen that happen, but I don't want to foreclose that possibility. But I think this goes back to this idea that the ERISA plan is allowed to make its denial based on the terms of the plan. Now, whether and to what bearing that has on the secondary plan, I guess it's just that that's the risk that's done by Farm Bureau in being in the space. I mean, there is no priority dispute, as you pointed out. That's sort of an illusion here. It's really they apparently have a disagreement with you about whether payment was due under the plan, and they feel it is, I guess, and for that reason they've made some payment, and you feel there isn't. And you're saying that the only way they can dispute the liability under the plan itself is to buy their way into the position of a subrogate. I think ERISA makes that very clear. How does it make it very clear? I think under the statute, under 502A1B, it permits a claim for benefits, which I believe that's the lens that we're all looking at right now. And it says there are two parties that can bring that, a participant or a beneficiary. Those are the only two. It didn't open up the door for others to be able to do that. To be precise, it doesn't say assignee or subrogate either. Correct, but the courts have expanded that a bit to permit an assignee or a subrogate. But ultimately, that standing is still derivative of that participant and beneficiary. It's not creating another subset of folks that can bring it. It's almost as if the member had brought it themselves through the assignment or as subrogate of the member. So when you look at it there, and Judge Kethledge, I believe you indicated, I think ERISA is very tight in this regard, a participant or a beneficiary, or, as the courts have allowed, those who have achieved derivative standing of those two folks. And if that requires payment to achieve that derivative standing, I think that's what the courts have established and that's what ERISA has established, that those are the only two ways that you can achieve this, direct standing or derivative standing for a claim for benefits. They didn't do that. They jumped the gun in this case. The argument, obviously, is that despite having failed to meet the requirements of being on this track, counsel's argument today is that we fit within the trying to get a federal common law claim. So help us with that. Federal common law is only looked to when ERISA doesn't establish a cause of action. It does in this instance. So it's foreclosed. Your argument is foreclosed. Absolutely. And that's where the Thornaple Valley case, the Delfield case that's cited throughout the briefing, is really inapplicable here. Those cases concern strictly a claim for a coordination of benefits priority dispute. It was not a claim for benefits under ERISA. Those aren't applicable. The Plumbers case, which I certainly put a lengthy cite in there, kind of speaks to this, that almost all cases that are looked to in this space are coordination of benefits cases. But when you're looking at something that involves plan interpretation, it is a claim for benefits under ERISA. In that case, too, it says very specifically that a subrogee can bring a claim for benefits action. We're not disputing that here. I'm not saying that they don't have the ability to do that. But when the suit was filed and when our response was filed, they were not a participant or a beneficiary, certainly, and they certainly didn't have derivative standing because those claims were not paid until almost a year and a half after the amended complaint was filed, actually probably over a year and a half after that. They didn't have standing to it. And that was always our position in this case. And I think Judge Knafen in the lower court saw that and certainly agreed with that position. So what's the nature of the claim that you think Farm Bureau is asserting then? They're asserting an ERISA 502A1B claim for benefits. Okay. And they're just not one of the parties that the statute enumerates who can bring that? Is your argument. Right, right. Initially, they have since paid the claims and achieved that derivative standing, but by time they had achieved that derivative standing, the time frame for filing an appeal in that instance. Stepping in the shoes of Mr. Van Kamp. Right. I mean, it's as if Mr. Van Kamp had filed the suit when being the subrogate. There was a time frame where the judge and Blue Cross were uninformed. Everybody thought that it had not been paid by Farm Bureau. Correct. How did that all come about? Does that matter? Timing-wise, I don't think it does. I mean, I think it's odd that they wouldn't have notified the court immediately upon payment because that was a big foundation of our argument. But the problem wasn't the notification. In the end, even had, I'm asking you, even had Farm Bureau piped up about that, it was still too late. The payment date didn't leave them in the shoes at the right time, in the shoes of the participant. Correct. And the decision on the motion for reconsideration acknowledged that, that despite the fact that they made that payment, achieved the standing that was necessary, the derivative standing, they still had the problem of exhaustion, which had not been accomplished. And that's why the dismissal stuck in that instance because that still had not been shored up. Okay, do you have anything further, counsel? No, I think based on that, I think our position is that the lower court's decision should be affirmed, that this matter should be properly classified, as the lower court did, as a 502A1B claim for benefits, and that the failure to exhaust the administrative remedies in this instance forecloses the case and it should be dismissed. Thank you. If you were listening carefully, you just heard counsel assert that the only way we could achieve standing to challenge the medical necessity determination was to pay the claim without having any knowledge of the plan because they refused to provide us any information about the plan or its deadlines or the status of the claim. They didn't even inform us of the denial or the basis for the denial until the court ordered them to do so long after the deadline for any appeal had passed. What Blue Cross just said is that an insurer, an auto insurer, has to pay in the dark with no knowledge and become a subrogee of the insured under their plan. Your coverage would have to include payment as well. So initially it would have to be something you already owed the plan participant. That's correct, and we did dispute that, but we did not dispute our obligation to pay. But we said if it's not medically necessary under their plan, it may not be reasonably necessary under ours. So that, again, required a determination by the court. Excuse me. That may sound harsh to make you pay first, but you're only required to pay if your coverage would include payment, right? That is correct. But if Blue Cross has priority, as they say they do, and they won't even tell us that they admit they have priority until after we've made a payment, what the decision below stands for is the proposition that whenever Blue Cross refuses to pay, someone else has to step in and pay before they can even challenge that determination. Only if you have your own independent obligation under your policy. Well, I don't challenge that. In fact, there is a limit, a million-dollar limit, on Blue Cross's obligation here. After that, we pay forever, basically, because under the no-fault law, there's no limit. I think kind of what you're making here is sort of an equitable argument. Absolutely. And those usually don't fare too well when one tries to plant them in the middle of a very complex, carefully drawn statutory regime, which ERISA undoubtedly is. I mean, you want to have a fight about their liability under the plan to pay benefits. That is a classic 502A1B claim. We see it all the time. Congress has enumerated certain kinds of parties that can bring that kind of claim, specifically. And Farm Bureau, as they come to us here, seems not to be among them. I mean, why isn't that just the end of it? Congress has chosen not to give you the cause of action you're trying to assert. Well, first of all, we do have that standing now because we have made payment, and that gives us standing under section 502A1B. We have an exhaustion problem at that point. But to say that there's been a failure to exhaust administrative remedies when the existence of those remedies— Well, I'm not focused on that. I'm just focused on Congress has said who can bring this kind of claim. And unfair or not, it seems that your client is not in that position. Your Honor, with respect, I want to point out that Delfield is a federal equitable— It's an unpublished 1999 case, right? I'm sorry. It's an equitable recoupment claim, which is recognized under ERISA. So it's not really correct to say that there are no equitable remedies recognized under ERISA. There's one unpublished opinion, I guess. But anyway, you answered my question. I appreciate it. I see I'm out of time. Thank you. Thanks. Counsel, thank you for your argument. We will consider your case carefully and issue an opinion in due course. And the Court may call the next case, please.